IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EVOLVED KAROMAC VISION CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>MAJORITY HOLDINGS INTERNATIONAL B.T., LLC, *et al.*,<br><br>        Defendants. | Civil No. 1:19-cv-269-TSE-MSN |

**REPORT & RECOMMENDATION**

This matter comes before the Court on plaintiff's motion for default judgment as to defendants Majority Holdings International B.T., LLC ("MHI") and Johnny Taylor (collectively "default defendants") (Dkt. No. 56). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's favor for the reasons that follow.

**I. Procedural Background**

On December 20, 2018, plaintiff filed the instant action against MHI, Johnny Taylor, Opportunity Investment Fund, LLC, Timothy R. King, and Jeffrey Crowder alleging that defendants breached an agreement with plaintiff and that defendants engaged in statutory conspiracy in fraudulently inducing plaintiff to lend them funds. Compl. (Dkt. No. 1-1) ¶¶ 12-18. This complaint was initially filed in the Circuit Court of Fairfax County. On March 7, 2019, defendant Opportunity Investment Fund, LLC successfully removed the action to this Court (Dkt. No. 1). The basis of this removal action was diversity jurisdiction, since plaintiff is a citizen of

Virginia, and defendants are citizens of Nevada and Texas and the amount in controversy exceeds $75,000 (Dkt. No. 1) 2. All defendants consented to removal. *Id*. On March 25, 2019, plaintiff filed an amended complaint against defendants, alleging breach of contract and statutory conspiracy. Defendant MHI was successfully served with the amended complaint on April 8, 2019 (Dkt. No. 19). Defendant Johnny Taylor was successfully served with the amended complaint on April 30, 2019 (Dkt. No. 33). On May 3, 2019, plaintiff filed a second amended complaint, again alleging breach of contract and statutory conspiracy (Dkt. No. 34). Defendant MHI was successfully served with the second amended complaint on May 28, 2019 (Dkt. No. 41). On June 18, 2019, plaintiff moved for substituted service as to defendant Johnny Taylor. (Dkt. No. 45). In support of this motion, plaintiff averred that Taylor had refused to open his door or permit service of process when plaintiff attempted to effectuate service of process. (Dkt. No. 46) 2. The Court granted this motion on June 19, 2019 (Dkt. No. 47). Plaintiff certified that the summons and second amended complaint were mailed to Johnny Taylor on June 28, 2019. (Dkt. No. 48).

Defendants MHI and Johnny Taylor failed to file responsive pleadings in a timely manner. Accordingly, on July 31, 2019, this Court ordered that plaintiff seek entry of default with respect to these two defendants. (Dkt. No. 49). Plaintiff filed a request for entry of default on August 9, 2019, and the Clerk of the Court filed an entry of default the next day. (Dkt. No. 53). On August 16, 2019, plaintiff filed a motion for default judgment as to defendants Johnny Taylor and MHI. (Dkt. No. 56) and a memorandum in support (Dkt. No. 57). On October 4, 2019, counsel for plaintiff appeared at the hearing on their motion for default judgment and no one appeared on behalf of defendants (Dkt. No. 67).[1]

---

[1] Subsequently, defendants OIF and Timothy King's counsel withdrew from this matter, and OIF and King have since failed to defend this action. This Report and Recommendation, however, concerns only defendants Taylor and MHI. Defendants OIF and King consented to the jurisdiction of the magistrate judge, and plaintiff's claims against them will be dealt with separately.

2

## II. Factual Background

The following facts are established by the second amended complaint, the motion for default judgment, and the memorandum in support of the motion for default judgment. Plaintiff Evolved Karomac Vision Corporation ("Evolved" or "Plaintiff") is a Virginia corporation located in Reston, which engages in "general commercial business enterprises." (Dkt. No. 34) ¶ 1. In June 2018, defendants King and Taylor approached the managing member of Evolved, through its representative Sherwood Capital Corporation, and convinced it to lend them $350,000.00 for a bridge loan related to a resort development project. *Id.* at ¶ 9. King and Taylor allegedly told plaintiff that the funds would be repaid no later than July 15, 2018, with an origination fee of $150,000.00. *Id*. at ¶ 10. Defendants told plaintiff that the funds for repayment were already secured and had been set aside. *Id*. at ¶ 11. In order to effectuate this transaction, the parties entered into a promissory note. Defendants agreed to provide as collateral 12 lots worth $900,000,000.00 located in Texas, properties owned by the third original defendant, Jeffrey Crowder. *Id*. at ¶ 21. To date, defendants have failed to repay any portion of the loan. *Id*. at ¶ 23. Plaintiff alleges both breach of contract, for which it seeks $500,000.00 in damages, including all accumulated interest from the loan, and fees and costs, and civil conspiracy, on the theory that defendants fraudulently induced the loan, for which it seeks compensatory damages of $1,500,000.00 plus fees and costs. *Id.* at ¶ 18. The instant default motion concerns defendants Taylor and MHI. Taylor is the managing member of MHI, and both Taylor and MHI are signatories to the promissory note at issue in this litigation.

## III. Jurisdiction and Venue

This Court has diversity jurisdiction over this action. 28 U.S.C. § 1332(a)(1) states that, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between. . . citizens of different States." Here, plaintiff is a Virginia corporation with a principal

place of business in Reston, defendant Taylor is a citizen of the State of Washington, and MHI is a Nevada limited liability company, located in Reno, Nevada. Therefore, diversity of citizenship exists.

This Court also has personal jurisdiction over the defendants. A federal district court is able to exercise personal jurisdiction over a corporation that is a citizen of another state if so authorized by the long-arm statute of the state in which the court sits, and so long as application of the long-arm statute is consistent with due process requirements. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). In this instance, Virginia's long-arm statute states that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth." *Id.* (citing Va. Code § 8.01–328.1(A)(1)).

As for the due process requirement, a defendant must have sufficient minimum contacts with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). This requires that plaintiffs demonstrate that a defendant purposefully directed his activities at the residents of the forum, and that the cause of action arises out of those activities. *Id.* Otherwise stated, the court must consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Id*.

Here, there is ample evidence that default defendants have availed themselves of the forum state. First, the promissory note at issue in this litigation contains a choice of law provision stating that the note will be governed by the laws of Virginia. (Dkt. No. 57-1).

The note also makes clear that Virginia is a valid forum in which plaintiff is permitted to confess judgment against defendants in the event of default. *Id*. at 3-4 (stating "After a default under this Note, the Debtors hereby authorize such attorney-in-fact to appear in the Office of the Clerk of the Circuit Court of Fairfax County, Virginia and confess judgment in favor of Holder"). The Fourth Circuit has held that a similar confession of judgment provision amounts to a voluntary submission to personal jurisdiction. *Orlando Residence, Ltd. v. Nelson*, 565 F. App'x 212, 222–23 (4th Cir. 2014) (explaining that "[a] confession of judgment is essentially a voluntary act; it is a voluntary submission to the jurisdiction of the court, giving by consent and without the service of process what could otherwise be obtained by summons and complaint, and other formal proceedings."). Thus, the default defendants have availed themselves of this forum, and specific jurisdiction exists.

Second, this claim arose out of activities directed at the forum state. In addition to agreeing to this Virginia choice of law provision in the promissory note, to submit to the jurisdiction of Virginia in the event of default, and agreeing upon venue in Fairfax County, default defendants availed themselves of the forum because they engaged in a venture to solicit a loan in Virginia, whereby repayment was to be made into Virginia. In addition, it was defendants who initiated contact into Virginia for purposes of procuring a loan in the first place, and the performance of the contractual duties (i.e. repayment of the loan) was to occur within Virginia. (Dkt. No. 57-8).

Third, the exercise of personal jurisdiction is constitutionally reasonable. In deciding if the exercise of personal jurisdiction is constitutionally reasonable, courts examine: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief;

5

(4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Burger King*, 471 U.S. at 477 (citing *World–Wide Volkswagen*, 444 U.S. at 292). Here, Virginia has an interest in resolving a case that involves substantial losses incurred by a Virginia entity. It similarly has an interest in transactions that involve loans from companies located in Virginia. Furthermore, a defendant or co-conspirator can "reasonably expec[t] to be haled into court where their [conspiratorial acts] inflicted the greatest harm." *Nathan v. Takeda Pharm. Am. Inc.*, 83 Va. Cir. 216 (2011); *see also St. Paul Fire & Marine Ins. Co. v. Hoskins*, No. 5:10-CV-00087, 2011 WL 1897683, at *3 (W.D. Va. May 18, 2011)(explaining that fraudulent communications made into Virginia were sufficient to establish jurisdiction under conspiracy). Because default defendants sought the benefits of a loan provided by a Virginia entity and the protections of the laws of Virginia in its choice of law provisions in the promissory note, it is reasonable to require defendants to submit to litigation in this forum as well. Finally, convenience and efficiency weigh in favor of resolving this default judgment in Virginia. Plaintiff is located in Virginia, all other defendants have consented to jurisdiction in Virginia, and this case, involving the same transactions and occurrences amongst the other defendants, is presently pending in this Court. Consequently, the exercise of personal jurisdiction is constitutionally reasonable as well.

### IV. Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin.*

*Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendant has not answered or otherwise timely responded, the well-pleaded allegations of fact in the complaint are deemed to be admitted.

**V.   Analysis**

Based on the complaint, the motion for default judgment, and the memorandum in support thereof, the undersigned Magistrate Judge makes the following findings.

The Federal Rules provide for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55. Here, this criterion is met since Taylor and MHI have failed to defend, despite having been successfully served. The undersigned finds that the claims in plaintiff's second amended complaint have been adequately plead for both breach of contract (count I) and civil conspiracy (count II).

    **a. Breach of contract**

First, the plaintiff has adequately alleged a claim of breach of contract against default defendants. Virginia law requires that to allege a breach of contract, a plaintiff must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Henderson v. Fairfax-Falls Church Commnity Serv. Bd.*, No. 1:18-CV-825, 2018 WL 6037522, at *4 (E.D. Va. Nov. 15, 2018).

7

As noted above, in June, 2018, default defendant Taylor convinced the plaintiff and its agent to lend defendants $350,000.00 for a loan to provide funding for a resort development project. (*See also* Dkt. No. 51-8). Defendants told plaintiff that this loan would be repaid no later than July 15, 2018, with a substantial origination fee. The parties entered into a promissory note, and plaintiff paid defendants $350,000.00.

This promissory note stated that stated that default defendant MHI (along with defendant OIF) promised to pay within 45 days, and that after that time, interest would accrue at the rate of 12% per annum. *Id*. The note also stated that in the event of litigation, the prevailing party would be entitled to costs and attorneys' fees. The note is signed by MHI, as well as Taylor in his individual capacity. *Id.*

**b. Civil Conspiracy**

Second, plaintiff has adequately plead its count of civil conspiracy as to default defendants. Virginia Code § 18.2–499 imposes liability for civil conspiracy on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of ... willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever."

A threshold question here is whether plaintiff can plead causes of action for both breach of contract and for civil conspiracy, a breach of a duty arising from tort. In Virginia, "[a] single act or occurrence can . . . support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages." *Abi-Najm v. Concord Condo*., *LLC*, 280 Va. 350, 361 (2010). Here, as in *Abi-Najm*, the underlying tort alleged to have occurred was fraud in the inducement. *Id*. The timing in this case is instructive. In both this case and in *Abi-Najm*, the fraud

8

was "perpetrated by [defendants] before a contract between the two parties came into existence, therefore it cannot logically follow that the duty [defendants] allegedly breached was one that finds its source in the [promissory note]." *Id*. Here, before the parties executed the promissory note, default defendants represented that "the funds necessary to repay the loan had already been secured, and had been separately set aside for repayment of the loan." (Dkt. No. 34) ¶11. Because, as in *Abi-Najm*, plaintiff has alleged that the fraudulent misrepresentations made by defendants occurred *before* entering into the promissory note, the source of the duty violated does not arise from contract. Therefore, plaintiff may maintain a cause of action for civil conspiracy.

Furthermore, the facts plead here adequately demonstrate civil conspiracy. "In order to state a cause of action for fraud in the inducement of a contract, a party must allege that the misrepresentations were 'positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract.'" *Lucas v. Thompson*, 61 Va. Cir. 44 (2003) (citing *Brame v. Guarantee Finance Co., Inc*., 139 Va. 394 (1924)). Here the undisputed facts show that defendants made false statements of material fact to induce plaintiff into making the loan, and did so collectively, with unity of purpose. Virginia's conspiracy statute "merely require[s] proof of legal malice, i.e., that [the defendant] acted intentionally, purposely, and without lawful justification." *Cars Unlimited II, Inc. v. Nat'l Motor Co*., 472 F. Supp. 2d 740, 751 (E.D. Va. 2007); *see also Simmons v. Miller*, 261 Va. 561 (2001). Furthermore, the conspiracy statute does not require proof that a conspirator's "primary and overriding purpose is to injure another in his trade or business." *Id.* at 751 (citing *Commercial Business Systems, Inc. v. Bellsouth Services, Inc*., 249 Va. 39, 47 (1995). Plaintiff is not required to prove specific

instances of "malicious communications" or actual malice. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co*., 108 F.3d 522, 527 (4th Cir. 1997). Instead, Evolved Karomac must simply demonstrate that the defendants intentionally misrepresented their financial standing. Here defendants represented that the funds necessary to repay the bridge loan had already been secured and set aside, but this was a falsehood. The record also shows that defendants failed to collateralize the loan, or hold any funds in escrow, and that no amount of the loan has been repaid. The failure to take any of these steps shows that this is no mere breach of contract. Rather, by failing to take these steps, default defendants show that they knew they would be unable to fulfill the terms of the note at the time they procured the contract. In making such fraudulent statements, defendants acted intentionally and without lawful justification. Therefore, default defendants purposefully and intentionally conspired to defraud plaintiff.

### c. Damages

On the issue of plaintiff's damages for breach of contract, the damages calculation is straightforward. As noted above, defendants obtained a $350,000.00 loan from plaintiff and agreed to pay a total sum of $500,000.00 by July 15, 2018. Defendants failed to pay; therefore under the promissory note they are due this sum plus interest assessed at the rate of 12 percent per year. As of the date the motion for default was filed, this totaled $570,000.04. Under the terms of the promissory note, defendants are also liable for plaintiff's costs and attorneys' fees, which total $17,010.00 in fees and $1,472.39 in costs.

On the issue of plaintiff's recovery for civil conspiracy, plaintiff is entitled to treble damages. Under Virginia law, "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of [the civil conspiracy statute], may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a

reasonable fee to plaintiff's counsel, and without limiting the generality of the term, 'damages' shall include loss of profits." Va. Code § 18.2-500. Despite obtaining the $350,000.00 loan from plaintiff and agreeing to pay plaintiff the total sum of $500,000.00 no later than July 15, 2018, defendants have failed to repay any portion of this sum. Given the clear statutory instruction that damages in this context includes loss of profits, the undersigned finds that plaintiff has incurred damages in the amount of $500,000.00. Trebling this amount results in a total damages calculation of $1,500,000.00.

## VI. Recommendation

For the reasons stated above, the undersigned recommends that a default judgment be entered in favor of Evolved Karomac Vision Corporation against defendants Taylor and MHI on count I of the complaint in the amount of **$570,000.04**, plus additional interest through the date of judgment, and $18,482.39 in attorneys' fees and costs, and that a default judgment be entered in favor of Evolved Karomac Vision Corporation against defendant on count II of the complaint in the amount of **$1,500,000.00**.

## VII. Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendant at its address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

January 29, 2020
Alexandria, Virginia